# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

JED WHITTAKER,

                Plaintiff,

      v.

BYRON MALLOTT, in his official capacity as
Lieutenant Governor of the State of Alaska,

                Defendant.

Case No. 3:16-cv-00220-SLG

## ORDER RE MOTIONS FOR SUMMARY JUDGMENT

Before the Court at Docket 8 is Plaintiff Jed Whittaker's Motion for Summary Judgment and at Docket 15 is Defendant Byron Mallott's Motion for Summary Judgment. Defendant did not respond to Plaintiff's motion, which was filed before Defendant was served with the Complaint. Plaintiff opposed Defendant's motion at Docket 19. No reply was filed.[1] Also before the Court, at Docket 17, is Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment. Defendant opposed this motion to strike at Docket 19. Oral argument was not requested and was not necessary to the Court's decision.

## BACKGROUND

This case concerns the constitutionality of Alaska's ballot access requirements as codified at Alaska Statute (AS) 15.25.160. Plaintiff Jed Whittaker was a candidate for United States Senator for Alaska in 2016; he was not affiliated with a "political party" as that term is defined by Alaska law.[2] To have his name printed on the official ballot, Mr.

---

[1] Plaintiff filed a notice of supplemental authority at Docket 25 and Docket 26.

[2] *See* AS 15.80.010(27) (defining a "political party" as one whose candidate obtained three percent of the vote in the immediately preceding general election for governor, U.S. Senator, or

Whittaker was required to submit a petition "signed by qualified voters of the state equal in number to at least one percent of the number of voters who cast ballots in the preceding general election."[3] For the 2016 election, a petition was valid if it contained at least 2,854 signatures.[4] Mr. Whittaker's petition contained only 2,081 signatures; the division of elections accordingly rejected his petition in August 2016.[5] Mr. Whittaker subsequently filed as a "write-in" candidate for the senate seat pursuant to AS 15.25.105.[6]

Mr. Whittaker filed his Complaint in September 2016 naming Lieutenant Governor Byron Mallott as Defendant, in his official capacity. Mr. Whittaker sought an injunction ordering the Alaska Division of Elections to include his name on the ballot and enjoining enforcement of AS 15.25.160. Mr. Whittaker did not dispute that he did not meet the statutory requirements to appear on the ballot. Instead, he contended that those requirements impermissibly infringed on his First and Fourteenth Amendment rights.[7] Because Mr. Whittaker sought leave to proceed in forma pauperis,[8] the Court reviewed the Complaint pursuant to 28 U.S.C. § 1915(e). On October 5, 2016, the Court found that

---

U.S. Representative).

[3] AS 15.25.160.

[4] Docket 4-1 (Aug. 20, 2016 ltr. from Josie Bahnke, Director, Div. of Elections to Jed Whittaker).

[5] Docket 4-1.

[6] *See* Docket 15 at 3 n.4. The Court takes judicial notice of this fact pursuant to Federal Rule of Evidence 201.

[7] *See* Docket 4 (Pl.'s Supplemental Documents) at 2.

[8] *See* Docket 3.

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 2 of 23

Mr. Whittaker's Complaint stated a plausible claim for relief and could proceed.[9]  But in the Court's initial screening order, the Court denied Mr. Whittaker's motion for expedited consideration because it did not relate to any specific motion.[10]

There were 706 write-in votes cast in the November 2016 senate election, but Mr. Whittaker was not elected.[11]

## DISCUSSION

### I. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claim arises under the U.S. Constitution.

### II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[12]  The parties appear not to dispute any material fact in this case; the only question is which party is entitled to judgment as a matter of law in light of those undisputed facts.

---

[9] *See* Docket 7 (Screening Order) at 4.

[10] Docket 7 at 4.

[11] *See* State of Alaska General Election Official Results, November 8, 2016, *available at* http://www.elections.alaska.gov/results/16GENR/data/results.pdf (updated Nov. 30, 2016). Defendant indicates there were only 545 write-in votes, *see also* Docket 15 at 4 n.8, and this discrepancy is unexplained.  It may be that only 545 votes had been tabulated at the time of Defendant's motion, which was filed shortly after the election.

[12] *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 3 of 23

### III. Mr. Whittaker's Motion for Summary Judgment

As discussed above, a motion for summary judgment will be granted if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] Mr. Whittaker's motion makes no such showing; he claims entitlement to judgment in his favor based on Defendant's alleged failure to timely answer or defend the Complaint.[14] Thus, though titled a motion for summary judgment, Mr. Whittaker's motion is better characterized as a motion for a default judgment pursuant Federal Rule of Civil Procedure 55(b).

Mr. Whittaker is not entitled to a default judgment. The Court issued its screening order on October 5, 2016; Mr. Whittaker moved for summary judgment the next day.[15] But Defendant was not served until October 26, 2016.[16] Pursuant to Federal Rule of Civil Procedure 12(a), Defendant then had 24 days to file a responsive pleading.[17] Defendant filed the motion for summary judgment on November 14, 2016, well within the prescribed time limit.[18]

---

[13] Fed. R. Civ. P. 56(a).

[14] *See* Docket 8 at 1 ("Plaintiff has received no response at all from Defendant . . . . Therefore, Plaintiff prays this Federal District Court grant this Motion for Summary Judgment . . . .").

[15] *See* Docket 7 (Screening Order); Docket 8 (P.'s Mot. for Summ. J.).

[16] *See* Docket 11 (Clerk's Notice of Service) at 1; Docket 12; Docket 13.

[17] *See* Fed. R. Civ. P. 12(a)(1)(A)(i) (providing 21 days); Fed. R. Civ. P. 6(d) (providing an additional 3 days when service is, as here, by mail).

[18] *See* Docket 15.

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 4 of 23

Because Defendant has not "failed to plead or otherwise defend," Mr. Whittaker is not entitled to either an entry of default or an entry of default judgment. The Court will therefore deny Mr. Whittaker's motion for summary judgment at Docket 8.

## IV. Motion to Strike

Defendant did not file a responsive pleading in this case, but instead moved immediately for summary judgment.[19] Mr. Whittaker moves to strike this motion on the grounds that Defendant must first answer the Complaint.[20] Defendant responds that "a defendant is not required to file a formal answer to a complaint prior to moving for summary judgment,"[21] and that he filed a motion for summary judgment instead of a motion to dismiss because the Court had already concluded that Mr. Whittaker's Complaint stated a plausible claim.[22]

Defendant points to a decision from the District Court for the District of Columbia that notes Federal Rule of Civil Procedure 56(b) permits a party to move for summary judgment "at any time."[23] That court also noted that the Federal Rules of Civil Procedure expressly permit a defendant to file a motion to dismiss under Rule 12 in lieu of filing an

---

[19] *See* Docket 15.

[20] Docket 17 at 1. Mr. Whittaker also maintains that Defendant's motion should have been filed as a cross-motion for summary judgment, not a motion for summary judgment. As explained above, Mr. Whittaker's motion is better characterized as a motion for default judgment, not one for summary judgment. And, in any event, the misnaming of a motion is not a basis for denying the relief sought by it.

[21] Docket 18 at 2.

[22] Docket 18 at 2 (citing Order at Docket 7).

[23] *See* Docket 18 at 2 (citing *Jones v. Dep't of Justice*, 601 F. Supp. 2d 297, 302 (D.D.C. 2009)).

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 5 of 23

answer.[24]  Thus, the court concluded that the filing a motion for summary judgment before answering is not different, in substance, from "filing a motion under Rule 12(b)(6) accompanied by matters outside the pleadings, which is then converted by operation of Rule 12(d) to one under Rule 56."[25]  This is consistent with Ninth Circuit law.[26]  "[T]he filing of an answer is not a prerequisite to the filing of a motion for summary judgment."[27]

The proper course in this case, then, is to treat Defendant's motion for summary judgment as a motion converted under Rule 12(b) and Rule 12(d), particularly as both parties have referenced documents outside the pleadings, which the Court has considered.  Accordingly, the Court will deny Mr. Whittaker's motion to strike at Docket 17.

## V. Defendant's Motion for Summary Judgment

The Court next considers Defendant's Motion for Summary Judgment.  Defendant seek summary judgment on two grounds.  First, he contends this case is moot and therefore no longer presents a justiciable controversy.[28]  Second, Defendant contends that Alaska's signature requirements are constitutional on the merits.[29]

---

[24] *See* Fed. R. Civ. P. 12(a)(4).

[25] *Jones*, 601 F. Supp. 2d at 302 (citing Wright & Miller, Fed. Practice & Proc. 3d § 2718).

[26] *See, e.g.*, *Gifford v. Travelers Protective Ass'n*, 153 F.2d 209, 210 (9th Cir. 1946) (affirming granting of summary judgment motion filed before answering).

[27] *Mann v. Lee*, 2009 WL 5178095 at *2 (N.D. Cal. Dec. 22, 2009).  Of course, unless a dispositive motion is granted, a defendant must still file an answer either denying or admitting the factual allegations in the Complaint.  *See* Fed. R. Civ. P. 8(b).  But the time to file an answer is suspended while the Court adjudicates a motion filed under Rule 12. Fed. R. Civ. P. 12(a)(4).

[28] *See* Docket 15 at 5–8.

[29] *See* Docket 15 at 8–13.

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 6 of 23

*A. Mootness*

Defendant contends that Mr. Whittaker's lawsuit is moot because the election for which he sought to be added to the ballot has come and gone. Because the Court cannot grant Mr. Whittaker meaningful relief, Defendant asserts, the case is moot.

Obviously, the Court cannot enter a judgment at this time that would impact the November 2016 ballot. As a general rule, "[w]here the activities sought to be enjoined already have occurred . . . the action is moot, and must be dismissed."[30] But there is an exception to this general mootness principle for cases that are "capable of repetition, yet evading review."[31] The exception applies when first, "the duration of the challenged action is too short to be fully litigated before it ceases," and second, "there is a reasonable expectation that the plaintiff[] will be subjected to the same action again."[32] Defendant argues that Mr. Whittaker's case does not fit that exception. And yet as Defendant recognizes, election-related cases "often fall within this exception because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits."[33]

---

[30] *Foster v. Carson*, 347 F.3d 742, 746 (9th Cir. 2003) (quoting *Bernhardt v. Cnty. of L.A.*, 279 F.3d 862, 871 (9th Cir. 2002)).

[31] *Weinstein v. Bradford*, 423 U.S. 147, 148–49 (1975) (per curiam) (citing *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498 (1911)).

[32] *Akina v. Hawaii*, 835 F.3d 1003, 1011 (9th Cir. 2016) (quoting *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999) (en banc)).

[33] *Wolfson v. Brammer*, 616 F.3d 1045, 1054 (quoting *Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003)).

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 7 of 23

The Ninth Circuit recently addressed a nearly identical claim of mootness in *Arizona Green Party v. Reagan*.[34] There, a political party that had not attained the vote percentage in the 2012 election required for automatic inclusion on the next ballot challenged the deadline for submitting petition signatures for qualification as a recognized party in the 2014 election.[35] The Ninth Circuit issued its decision on the merits in 2016, nearly two years later. The Ninth Circuit recognized that "[a]ll specific demands for relief related to the 2014 election are moot," but held that the challenge to the statutory requirement's constitutionality was not.[36]

So too here, Mr. Whittaker's "specific demands for relief related to the [2016] election are moot," but his challenge to the signature requirement's constitutionality is not. Mr. Whittaker has sought relief beyond the 2016 election; he seeks an order enjoining enforcement of AS 15.25.160 generally.[37] Under that statute and other applicable sections of Alaska law, a prospective candidate must submit a "full petition with voter signatures" on the day of the primary election preceding the general election.[38] Primary elections are held "on the third Tuesday in August,"[39] and the general election is held on

---

[34] 838 F.3d 983 (9th Cir. 2016).

[35] *See id.* at 985–86. The party did not challenge the number of signatures required—1.33% of the total votes cast in the last gubernatorial election—but did challenge the requirement that the petition be submitted 180 days in advance of the primary election.

[36] *See id.* at 987–88.

[37] *See* Docket 20-1 (proposed order).

[38] AS 15.25.150.

[39] AS 15.25.020.

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 8 of 23

"the Tuesday after the first Monday in November."[40]  Ballots must be distributed "not less than 25 days before the date for the election."[41]  This leaves approximately two months to resolve any challenge to the signature requirement for a given year—from mid-August to mid-October.  Despite Defendant's implied assertion that this two-month timeframe is adequate for a judicial resolution,[42] the Court concludes that "the duration of the challenged action is too short to be fully litigated before it ceases."[43]

Defendant also faulted Mr. Whittaker for failing to "indicate that he intends to avail himself of the petition process in any future elections."[44]  The Court therefore ordered Mr. Whittaker to indicate whether he intends to be a candidate again.[45]  In response, Mr. Whittaker promptly filed a statement indicating that he did so intend.[46]  Based on that representation, the Court concludes that there is a reasonable expectation that Mr. Whittaker will be subjected to the same requirements again.[47]

In light of the foregoing, the Court finds the case is not moot.

---

[40] AS 15.15.020.

[41] AS 15.15.050.

[42] Docket 15 at 7.

[43] *Akina*, 835 F.3d at 1011 (quoting *Madison Sch. Dist. No. 321*, 177 F.3d at 798).

[44] Docket 15 at 7–8 (citing *Wolfson*, 616 F.3d at 1055).

[45] *See* Docket 21 (Order).

[46] *See* Docket 22 (Pl.'s Supp. Notice).

[47] *Cf. Wolfson*, 616 F.3d at 1055 (finding election-related lawsuit not moot when there was sufficient evidence of plaintiff's intent to seek office in the future).

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 9 of 23

*B. Merits*

The Court turns now to the merits of the question presented in Mr. Whittaker's Complaint and Defendant's Motion for Summary Judgment: Is AS 15.25.160 constitutional?[48] That statute provides that to have one's name listed on the ballot for "the office of governor, lieutenant governor, United States senator, and United States representative," a candidate must submit a petition that is "signed by qualified voters of the state equal in number to at least one percent of the number of voters who cast ballots in the preceding general election."[49]

Mr. Whittaker has suggested in his Complaint that the State has no authority to impose any restrictions on ballot access, and that Supreme Court cases—he specifically references *Burdick v. Takushi*[50]—holding otherwise are in error.[51] Mr. Whittaker argues that the U.S. Constitution grants to a state the power to regulate "the more mundane issue of the mechanics of Elections, not the more substantive issue of qualifying as a candidate for election as a Senator or Representative."[52] But this Court has no authority to disregard

---

[48] Mr. Whittaker appears to challenge the statute facially. *See* Docket 19 at 1 ("Plaintiff stands for the right of all Alaskans to be treated with equality in future elections"); Docket 20-1 at 1 ("Defendant shall not enforce AS 15.25.160"); Docket 6 at 1–2 (discussing burden on poor, disabled, and rural residents). To prevail on a facial challenge, Mr. Whittaker must establish "that no set of circumstances exists under which the Act would be valid." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

[49] Both the Alaska statutes and relevant case law refer to voters who have signed a petition as "subscribers." *See, e.g.*, AS 15.45.160 (referring to initiative petition "subscribers"). The Court uses this terminology as well.

[50] 504 U.S. 428 (1992).

[51] *See* Docket 4 (Additional Related Document) at 3.

[52] Docket 4 at 2. As explained above, Mr. Whittaker was in fact a candidate for senate; he was

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 10 of 23

controlling decisions of the Supreme Court or the Ninth Circuit; it is required to apply that precedent and will do so in this case.[53]

Under that binding precedent, it is well established that "[t]he impact of candidate eligibility requirements on voters implicates basic constitutional rights" protected by the First and Fourteenth Amendments.[54] The Supreme Court has recognized that such laws burden both "aspirants for office" and voters: "The right to vote is 'heavily burdened' if that vote may be cast only for major-party candidates at a time when other parties or other candidates are 'clamoring for a place on the ballot.' The exclusion of candidates also burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying-point for like-minded citizens."[55]

But at the same time, "not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates."[56] As the Supreme Court has explained, a court reviewing a ballot access restriction

> must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment,

---

permitted to run as a write-in candidate even though his name did not appear on the ballot.

[53] *See, e.g.*, *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) ("[I]t is this [Supreme] Court's prerogative alone to overrule one of its precedents." (quoting *United States v. Hatter*, 532 U.S. 557, 567 (2001)) (alteration in original)).

[54] *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983).

[55] *Id.* at 787–88 (quoting *Williams v. Rhodes*, 393 U.S. 23, 31 (1968)) (internal citations omitted).

[56] *Id.* at 788.

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 11 of 23

the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.[57]

When reviewing ballot access restrictions, the Supreme Court has also clarified that the standard of review is not always strict scrutiny. "Instead . . . a more flexible standard applies."[58] Thus, "the rigorousness of [a court's] inquiry . . . depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights."[59] "[A]n election regulation that imposes a severe burden is subject to strict scrutiny and will be upheld only if it is narrowly tailored to serve a compelling state interest," whereas "election regulations imposing a lesser burden" may be justified "by demonstrating the state has important regulatory interests."[60]

### 1. Severity of Burden

Ninth Circuit precedent provides that one challenging an election law bears "the initial burden of showing that [the state's] ballot access requirements seriously restrict the availability of political opportunity."[61] Assessing the burden of a challenged statute

---

[57] *Id.* at 789.

[58] *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

[59] *Id.* at 434.

[60] *Nader v. Cronin*, 620 F.3d 1214, 1217 (9th Cir. 2010) (quoting *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008)); *see also Clingman v. Beaver*, 544 U.S. 581, 592 (2005) ("[S]trict scrutiny is appropriate only if the burden is severe.").

[61] *Cronin*, 620 F.3d at 1217–18 (quoting *Libertarian Party of Wash. v. Munro*, 31 F.3d 759, 762 (9th Cir. 1994), *overruled on other grounds by Public Integrity All. Inc. v. City of Tucson*, 836 F.3d 1019, 1025 (9th Cir. 2016) (en banc)) (alteration in original).

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 12 of 23

requires examination of "the entire scheme regulating ballot access."[62]  Alaska law provides that a candidate for any of the four offices affected by AS 15.25.160 may appear on the ballot in one of three ways.  First, a candidate will appear on the ballot if the candidate is selected in a primary election to represent a "political party" that garnered more than three percent of the vote in the preceding election.[63]  Second, a candidate "not representing a political party" may be "nominated by petition."[64]  The validity of that petition turns, in part, on the signature requirements under consideration in this case; to be valid, a petition must "be signed by qualified voters of the state equal in number to at least one percent of the number of voters who cast ballots in the preceding general election."[65]  Third, and finally, a candidate may run as a "write-in" candidate.[66]  To run as a write-in candidate, the candidate must submit a letter of intent to the director of elections providing information for verifying eligibility.

---

[62] *Id.* at 1217 (quoting *Libertarian Party of Wash.*, 31 F.3d at 761–62).

[63] *See* AS 15.25.100 ("The director shall place the name of the candidate receiving the highest number of votes for an office by a political party on the general election ballot."); AS 15.80.010 (defining "political party" to require three percent of the vote in the previous election for governor, U.S. Senator, or U.S. Representative); AS 15.25.010 (providing for primary election).

[64] AS 15.25.140; *see also* AS 15.25.190 ("The director shall place the names and the political group affiliation of persons who have been properly nominated by petition on the general election ballot.").

[65] AS 15.25.160.

[66] AS 15.25.105(a) ("If a candidate does not appear on the primary election ballot or is not successful in advancing to the general election and wishes to be a candidate in the general election, the candidate may file as a write-in candidate.").  The name of a write-in candidate, such as Mr. Whittaker was, is not preprinted on the ballot, but appears there only when a voter writes it in.

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 13 of 23

As evidence of the burden of the second option, Mr. Whittaker points to his own experience and to that of Margaret Stock, another independent candidate for senate in 2016.[67] Mr. Whittaker asserts that Ms. Stock expended over $111,000 collecting signatures in 2016.[68] But Ms. Stock appeared on the 2016 ballot; even if she and her campaign expended some energy to do so, the one-percent requirement was apparently not overly burdensome to her.[69] Mr. Whittaker stresses that he is of limited financial means. And he asserts that it would take him—if he alone were to collect signatures for his candidacy—up to 285 hours to collect the required number of signatures. But while Mr. Whittaker has established that *some* burden results from the one-percent requirement, the Court must determine the extent of that burden.

Defendant asks the Court to hold as a matter of law that a one-percent signature requirement for independent candidacy petitions imposes a low burden and is therefore not subject to strict scrutiny.[70] Defendant points to the Ninth Circuit's recent decision in *Nader v. Cronin*, in which the Court of Appeals upheld Hawaii's one-percent signature requirement and had "little trouble concluding that, in isolation, the burden [of that

---

[67] *See* Docket 6 (Pl.'s Second Mem.) at 1.

[68] *See* Docket 6 at 1. The Court found no evidence in the record to support this number. To supplement its review, the Court ordered Defendant to lodge an affidavit filed by Ms. Stock in an unrelated case and referenced by Mr. Whittaker. *See* Docket 23 (Order); Docket 24 (Notice). That affidavit merely states that collecting signatures would entail "considerable time, effort, and expense." Docket 24-1 (Stock Aff.) at 2, ¶ 4. In light of Mr. Whittaker's self-represented status and the necessity of resolving factual disputes in the nonmovant's favor at the summary judgment stage, the Court assumes the $111,000 figure to be accurate for purposes of Defendant's motion.

[69] *See* State of Alaska General Election Candidate List, *available at* http://www.elections.alaska.gov/election/2016/General/candidate_info_gen_2016.php#Senator.

[70] *See* Docket 15 (Mem.) at 12.

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 14 of 23

requirement] on independent candidates for president and vice-president is minimal."[71]
But after assessing the burden in isolation, the Circuit Court in *Cronin* then observed that
a court "must examine the entire scheme regulating ballot access."[72]  "The relevant
inquiry is 'whether reasonably diligent minor party candidates can normally gain a place
on the ballot, or if instead they only rarely will succeed.'"[73]  To answer this inquiry, the
one-percent requirement cannot be considered in isolation.[74]  Here, four factors of the
Alaska statutory scheme are significant: (1) the number of signatures required; (2) any
restrictions on who may sign a ballot; (3) the timeframe for obtaining signatures; and (4)
the deadline for filing a petition.[75]

In *Storer v. Brown*, the Supreme Court examined not only the five-percent
signature requirement imposed by California law, but also the absolute number of
signatures a candidate would have to collect.  The Supreme Court noted that collecting
325,000 signatures over just 24 days would be a "substantial burden" but "would not
appear to require an impractical undertaking for one who desires to be a candidate for
President."[76]  In absolute terms, the 2,854 signatures Mr. Whittaker was required to

---

[71] *Cronin,* 620 F. 3d at 1217.

[72] *Id.* (quoting *Libertarian Party of Wash.*, 31 F.3d at 761-62.

[73] *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 730 (9th Cir. 2015) (quoting *Libertarian Party of Wash.*, 31 F.3d at 762).

[74] *Cronin*, 620 F.3d at 1217.

[75] *See id.* at 1218.

[76] *Storer v. Brown*, 415 U.S. 724, 739 (1974).  The Supreme Court remanded the case to evaluate the burden in light of the restrictions on who could sign the petition and the timeframe for collecting the signatures.  *See id.* at 740.

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 15 of 23

collect in 2016 is substantially less than either the California requirement or those upheld in other states, such as Texas's one-percent, 22,000-signature requirement reviewed and upheld by the Supreme Court in *American Party of Texas v. White*[77] or Hawaii's one-percent, 3,711-signature requirement more recently upheld by the Ninth Circuit in *Cronin*.[78]

Under Alaska law, only the signatures of "qualified voters" are counted in evaluating a petition.[79]  But the law defines a qualified voter as "a person who has the qualification of a voter and is not disqualified" by statute or the state constitution—essentially anyone who can vote.[80]  This is in contrast with the Ohio law struck down by the Supreme Court in *Williams v. Rhodes*, which effectively required petition subscribers to be new voters.[81]  Also, Alaska's law does not limit how many petitions a qualified voter

---

[77] 415 U.S. 767, 783–84 (1974).

[78] *Cronin*, 620 F.3d at 1216.

[79] *See* AS 15.25.160.

[80] AS 15.80.010(32).  A voter is disqualified if convicted of a "felony involving moral turpitude," AS 15.05.030(a), or adjudicated to be of "unsound mind," Alaska Const. art. V, § 2.

[81] *See* 393 U.S. 23, 25 n.1 (1968).  That law required petition subscribers to have "voted for a majority of that party's candidates at the last election" or to have "never voted in any election before."  Because the law concerned creation of a new political party, no voter could have voted for the petitioner's candidates in the prior election.  *See id.*

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 16 of 23

may sign.[82] And unlike the Arizona provision struck down by the Ninth Circuit in *Nader v. Brewer*, Alaska's law does not restrict who may collect such signatures.[83]

The parties have not discussed the timeframe for gathering signatures under Alaska law, but the Court is aware of no restriction apart from the deadline for submission. Mr. Whittaker announced his candidacy on January 8, 2016, over seven months before his petition was due.[84] He apparently could collect signatures at any time up until the date of the primary election. This open-ended collection period is in marked contrast to the 90-day period a district court held to unreasonably burden constitutional rights in *Libertarian Party of Oklahoma v. Oklahoma State Election Board,*[85] and is more generous than Georgia's 180-day period upheld by the Supreme Court in *Jenness v. Fortson.*[86]

---

[82] *See* AS 15.25.160; *see also Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (upholding a 5% requirement in Georgia when the state had "imposed no arbitrary restrictions whatever upon the eligibility of any registered voter to sign as many nominating petitions as he wishes"). Alaska's law is less burdensome in this regard than the Texas law *upheld* by the Supreme Court in *American Party of Texas v. White*, which provided that "[n]o person shall sign the application of more than one candidate for the same office . . . and no person who has voted at either the general primary election or the runoff primary election of any party shall sign an application in favor of anyone for an office for which a nomination was made at either such primary election." 415 U.S. at 775 n.7 (quoting Texas law). In that case, however, the statute required signatures equal to the lesser of 3–5% of the vote or 500 total signatures, a fact on which the Court put considerable emphasis. *See id.* at 788–89. Moreover, the Court found that the prospective candidates had presented no evidence to support their claim that the restriction significantly limited the pool of qualified subscribers. *Id.* at 790–91 ("This was simply a failure of proof, and for that reason we must affirm . . . .").

[83] 531 F.3d 1028, 1036–38 (9th Cir. 2008) (striking down Arizona provision requiring petition circulators to be Arizona residents); *see also Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 197 (1999) (striking down Colorado provision requiring petition circulators to be registered to vote in Colorado).

[84] *See* Docket 4 at 2.

[85] 593 F. Supp. 118, 121 (W.D. Okla. 1984).

[86] 403 U.S. at 433, 438.

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 17 of 23

Other courts have consistently found that an extended period of time to collect signatures eases the burden of doing so.[87]

Finally, the deadline for filing the petition and signatures under Alaska law is not unreasonably early. The petition is due on the date of the primary election, which by statute is held on the third Tuesday in August.[88] This date will always fall between 70 and 90 days before the general election, which is held the first Tuesday after the first Monday in November.[89] In *Cronin*, the Ninth Circuit upheld a Hawaii statute that required submission 60 days prior to the general election.[90] Alaska's statute is thus somewhat more onerous in this regard than the Hawaii statute, but this additional time is quite reasonable given the remoteness of many parts of Alaska and the resultant logistical challenges of conducting statewide elections.[91]

Moreover, as the Supreme Court explained in *Anderson v. Celebrezze*, the burden of early filing deadlines arises from the lack of voter engagement before the primary season. In *Anderson*, the filing deadline was 75 days before the primary election, which the Supreme Court held could prevent "a newly-emergent independent candidate" from "serv[ing] as the focal point for a grouping of Ohio voters who decide, [after the filing

---

[87] *See, e.g.*, *Swanson v. Worley*, 490 F.3d 894, 906 (11th Cir. 2007) (contrasting Alabama's unlimited collection period with the constrained, but constitutional, 180-day period in *Jenness*).

[88] AS 15.25.150.

[89] In 2018, there will be 77 days from the primary election to the general election.

[90] *See Cronin*, 620 F.3d at 1216.

[91] Indeed, viewed in light of the statutory deadline for distributing ballots, the filing deadlines are comparable. *Compare* AS 15.15.050 (ballots must be distributed at least 25 days in advance), *with* Haw. Rev. Stat. § 11-119(d) (ballots must be distributed at least 15 days in advance).

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 18 of 23

deadline], that they are dissatisfied with the choices within the two major parties."[92]  The

Alaska regime, by contrast, permits signature collection up until the date of the primary,

allowing prospective independent candidates to capitalize on the voter engagement that

accompanies a primary campaign.[93]  Thus, in this regard Alaska's law is unlike that struck

down either by the Supreme Court in *Anderson* or by the Ninth Circuit in *Brewer.*[94]  Courts

around the country have similarly noted that a filing deadline that falls on or around the

date of the primary election is not burdensome under *Anderson.*[95]

 Of course, the burden must be assessed in its entirety, not piecemeal.  In sum,

Alaska law requires an aspiring independent candidate to collect signatures amounting

to only one percent of the voting populace from among all qualified voters in Alaska, over

an indefinite period of time ending on the date of the primary election.  At its core, the

"[t]he relevant inquiry is 'whether reasonably diligent minor party candidates can normally

gain a place on the ballot, or if instead they only rarely will succeed.'"[96]

---

[92] 460 U.S. 780, 791 (1983).

[93] *See id.* at 792 ("When the primary campaigns are far in the future and the election itself is even more remote, the obstacles facing an independent candidate's organizing efforts are compounded.  Volunteers are more difficult to recruit and retain, media publicity and campaign contributions are more difficult to secure, and voters are less interested in the campaign.").

[94] 531 F.3d at 1039–40 (invalidating requirement that petitions for independent candidates be filed 90 days before the *primary* election).

[95] *See Pisano v. Strach*, 743 F.3d 927, 934–36 (4th Cir. 2014) (upholding North Carolina law requiring filing well in advance of the general election, but ten days after the primary election); *Swanson v. Worley*, 490 F.3d 894, 905–06, 910 (11th Cir. 2007) (upholding Alabama's primary-date deadline); *Lawrence v. Blackwell*, 430 F.3d 368, 374–75 (6th Cir. 2005) (upholding Ohio's primary-eve deadline); *Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 76–77 (3d Cir. 1999) (upholding New Jersey's primary-date deadline).

[96] *Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 730 (9th Cir. 2015) (quoting *Libertarian Party of Wash. v. Munro*, 31 F.3d 759, 762 (9th Cir. 1994), *overruled on other grounds by Public*

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 19 of 23

Mr. Whittaker states that it would take him 285 hours to collect the required signatures if he worked alone.[97]  As explained above, Mr. Whittaker is not required to collect all the signatures himself; organizing and recruiting volunteers is a traditional aspect of campaigning.  Moreover, Mr. Whittaker could begin collecting those signatures well in advance of the deadline.  Finally, Mr. Whittaker was permitted to run as a write-in candidate, even after his petition was rejected.

Upon consideration of Alaska's laws and the controlling case law, the Court concludes that Alaska's system is not overly restrictive.  "Past experience will be a helpful, if not always an unerring, guide: it will be one thing if independent candidates have qualified with some regularity and quite a different matter if they have not."[98]  Alaska's experience with independent candidates is strong evidence that its laws are little impediment to ballot access: there were three independent candidates on the ballot for the office of U.S. Senator for the 2016 election alone.[99]  Moreover, and unlike Hawaii, whose one-percent signature requirement was upheld in *Cronin*, independent candidates in Alaska may run as a write-in candidate if they are unable to attain the required number

---

*Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1025 (9th Cir. 2016) (en banc)).

[97] Docket 6 at 1.

[98] *Storer*, 415 U.S. 724, 742; *see also Brewer*, 531 F.3d at 1038 (examining historical experience to assess burden); *Libertarian Party of Wash.*, 31 F.3d at 763 (same).

[99] *See* State of Alaska General Election Candidate List, *available at* http://www.elections.alaska.gov/election/2016/General/candidate_info_gen_2016.php#Senator.

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 20 of 23

of signatures, just as Mr. Whittaker did here.[100]  The Hawaiian system prohibits write-in candidates,[101] a distinction that has some constitutional significance.[102]

In light of the foregoing, the Court concludes that the burden of Alaska's ballot access laws is not severe, and that strict scrutiny review is therefore unwarranted.

### 2. State Justification

When the burden is not severe and strict scrutiny therefore does not apply, "the State's important regulatory interests are generally sufficient to justify the restrictions."[103] Still, the Court must subject the regulation to "a balancing and means-end fit analysis."[104] As the Supreme Court has explained, a court assessing the constitutionality of ballot access restrictions must "determine the legitimacy and strength of each of those interests"

---

[100] *See* State of Alaska General Election Candidate List, *available at* http://www.elections.alaska.gov/election/2016/General/candidate_info_gen_2016.php#Senator. While certainly there are advantages to having one's name appear on the ballot, winning a write-in campaign is no pipe-dream: the senator who defeated Mr. Whittaker in the November 2016 election was herself elected as a write-in candidate in 2010.  *See* State of Alaska General Election Official Results, November 2, 2010, *available at* http://elections.alaska.gov/results/10GENR/data/results.pdf; Yereth Rosen, *Senator Lisa Murkowski wins Alaska write-in campaign*, REUTERS, Nov. 18, 2010, *available at* http://www.reuters.com/article/us-usa-elections-murkowski-idUSTRE6AG51C20101118.

[101] *See Burdick v. Takushi*, 504 U.S. 428, 440–41 (1992) (upholding Hawaii's write-in voting ban).

[102] *Compare Williams v. Rhodes*, 393 U.S. 23, 34–35 (1968) (holding unconstitutional system that, among other restrictions, did not permit write-in candidacies), *with Jenness v. Fortson*, 403 U.S. 431, 438 (1971) (upholding election regulations when, "[u]nlike Ohio, Georgia freely provides for write-in votes").

[103] *Public Integrity All.*, 836 F.3d at 1024 (quoting *Burdick*, 504 U.S. at 434).

[104] *Id.* at 1025 (citing *Burdick*, 504 U.S. at 788).

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 21 of 23

and "consider the extent to which those interests make it necessary to burden the plaintiff's rights."[105]

The Court has already determined that the burden imposed by Alaska's ballot access law is not severe. Indeed, with historical experience as a guide, the Court concludes that the burden is quite low.[106] Similar signature requirements have consistently been upheld by courts across the United States, including by the Supreme Court.[107] As the Supreme Court has noted, "requiring independent candidates to evidence a 'significant modicum of support' is not unconstitutional" because of the state's "compelling" interest in "regulating the number of candidates on the ballot to avoid undue voter confusion."[108] Such is the very interest that Defendant asserts is protected by Alaska's statutory requirements.[109] Voter confusion is widely recognized as a legitimate concern,[110] and is one that Alaska has advanced to defend its election laws since at least

---

[105] *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

[106] *Cf. Nader v. Cronin*, 620 F.3d 1214, 1217 (9th Cir. 2010) (concluding that the burden of a 1% requirement "is low" even without the opportunity to run as a write-in candidate).

[107] *See Am. Party of Texas v. White*, 415 U.S. 767, 789 (1974); *Jenness*, 403 U.S. at 442.

[108] *Am. Party of Texas*, 415 U.S. at 789, 782 n.14.

[109] *See* Docket 15 (Mot.) at 11.

[110] *See Bullock v. Carter*, 405 U.S. 134, 145 (1972) ("The Court has recognized that a State has a legitimate interest in regulating the number of candidates on the ballot. In so doing, the State understandably and properly seeks to prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority, or at least a strong plurality, of those voting, without the expense and burden of runoff elections." (citations omitted)); *Jenness*, 403 U.S. at 442 ("There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election."); *cf. Lubin v. Panish*, 415 U.S. 709, 715 (1974) (noting that "the fundamental importance of ballots of reasonable size limited to serious candidates with some prospects of public support" is not "open to debate").

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 22 of 23

the 1980s.[111]   It is the same interest that the Ninth Circuit recognized as adequate justification for Hawaii's one-percent signature requirement.[112]   As the Supreme Court has recognized, "any fixed percentage requirement is necessarily arbitrary," but the one-percent requirement "falls within the outer boundaries of support the State may require before according" an independent candidate a place on the ballot.[113]

The Court concludes that given the relatively low burden imposed by Alaska's ballot access regime for independent candidates and Alaska's important interest in regulating the number of candidates on the ballot, the challenged statute, AS 15.25.160, does not unconstitutionally burden voters' or candidates' First or Fourteenth Amendment rights.  Alaska's statute does not violate the U.S. Constitution.

## CONCLUSION

In light of the foregoing, Mr. Whittaker's Motion for Summary Judgment at Docket 8 is DENIED.  Mr. Whittaker's Motion to Strike at Docket 17 is DENIED.  Defendant's Motion for Summary Judgment at Docket 15 is GRANTED.

The Clerk of Court is directed to enter a judgment for Defendant accordingly.

DATED this 27th day of April, 2017 at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[111] *See Vogler v. Miller*, 651 P.2d 1, 5 (Alaska 1982) (invalidating an earlier version of AS 15.25.160 that imposed a 3% signature requirement as violative of the Alaska Constitution).

[112] *See Cronin*, 620 F.3d at 1218.

[113] *Am. Party of Texas*, 415 U.S. at 783.

Case No. 3:16-cv-00220-SLG, *Whittaker v. Mallott*
Order re Motions for Summary Judgment
Page 23 of 23